## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

OLIVIA HAYNIE, individually and on behalf of all
others similarly situated,

      Plaintiff,                         No. 3:20-CV-467 (MAD/ML)

v.

CORNELL UNIVERSITY,

      Defendant.


ALEC FABER, individually and on behalf of others
similarly situated,

      Plaintiff,                         No. 3:20-CV-471 (MAD/ML)

v.

CORNELL UNIVERSITY,

      Defendant.


AHNAF RAHMAN, on behalf of himself and all
others similarly situated,

      Plaintiff,                         No. 3:20-CV-592 (MAD/ML)

v.

CORNELL UNIVERSITY,

      Defendant.


## DEFENDANT CORNELL UNIVERSITY'S RESPONSE IN PARTIAL OPPOSITION TO PLAINTIFFS' MOTION TO CONSOLIDATE CASES, APPOINT BURSOR & FISHER PA, CARLSON LYNCH LLP, AND ANASTOPOULO LAW FIRM AS CO-LEAD INTERIM CLASS-COUNSEL, AND SET AN INITIAL SCHEDULE

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................1

BACKGROUND ........................................................................................................................2

ARGUMENT .............................................................................................................................3

I.      Rule 23 Cautions Against The Appointment Of "Ungainly" And Inefficient Lead
        Counsel Structures. ......................................................................................................3

II.     Plaintiffs Have Not Shown Good Reason To Appoint Three Co-Lead Firms,
        Rather Than One Firm, Or Explained How The Three Firms Will Avoid
        Significant Duplication. ...............................................................................................5

III.    If The Court Permits A Multi-Firm Leadership Structure, It Should Take Steps To
        Ensure That Overstaffing And Duplication Do Not Occur. ........................................8

CONCLUSION..........................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*In re Air Cargo Shipping Services Antitrust Litigation*,
    240 F.R.D. 56 (E.D.N.Y. 2006) ...................................................................................7

*In re Air Cargo Shipping Services Antitrust Litigation*,
    2008 WL 5958061 (E.D.N.Y. Sept. 26, 2008) ............................................................7

*Cappello v. Franciscan Alliance, Inc.*,
    2016 WL 10744872 (N.D. Ind. Sept. 8, 2016) ...........................................................5

*Cappello v. Franciscan Alliance, Inc.*,
    2017 WL 781609 (N.D. Ind. Feb. 28, 2017)...............................................................9

*Castaneda v. Burger King Corp.*,
    264 F.R.D. 557 (N.D. Cal. 2009).................................................................................4

*Hodges v. Bon Secours Health System, Inc.*,
    2016 WL 4447047 (D. Md. Aug. 24, 2016) ...........................................................4, 5

*In re Issuer Plaintiff Initial Public Offering Antitrust Litigation*,
    234 F.R.D. 67 (S.D.N.Y. 2006) .................................................................................3

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
    2011 WL 5007957 (S.D.N.Y. Oct. 18, 2011) ............................................................4

*In re: Merck & Co., Inc. Securities Litigation*,
    432 F.3d 261 (3d Cir. 2005)........................................................................................4

*In re Millennial Media, Inc. Securities Litigation*,
    87 F. Supp. 3d 563 (S.D.N.Y. 2015)..........................................................................7

*In re Nest Labs Litigation*,
    2014 WL 12878556 (N.D. Cal. Aug. 18, 2014) .........................................................5

*In re Parking Heaters Antitrust Litigation*,
    310 F.R.D. 54 (E.D.N.Y. 2015)...............................................................................5, 6

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*,
    330 F.R.D. 11 (E.D.N.Y. 2019)..................................................................................7

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*,
    2016 WL 8138988 (E.D.N.Y. Nov. 30, 2016)........................................................6, 7

*Youngblood v. Family Dollar Stores, Inc.*,
    2011 WL 4597555 (S.D.N.Y. Oct. 4, 2011) ..............................................................4

**Other Authorities**

Defendant's Response to Plaintiffs' Joint Motion for Appointment of Co-Lead
Interim Class Counsel, ECF No. 42, *In re: University of Miami COVID-19
Tuition & Fee Refund Litigation*, No. 20-cv-60851-AHS (S.D. Fla. Aug. 7,
2020) ...................................................................................................................9

Federal Rule of Civil Procedure 23(g) .........................................................................3, 4

*Manual for Complex Litigation, Fourth* (2004) ...............................................................9

Order Appointing Co-Lead Interim Class Counsel, ECF No. 48, *In re: University
of Miami COVID-19 Tuition & Fee Refund Litigation*, No. 20-cv-60851-AHS
(S.D. Fla. Aug. 19, 2020) ......................................................................................9

Order re: Plaintiff Christina Diaz's Motion to Stay or Consolidate [18] &
Plaintiffs Latisha Watson & J. Julia Greenberg's Joint Motion to Consolidate
[30], ECF No. 54, *Diaz v. University of Southern California*, No. 20-cv-4066-
DMG-PVC (C.D. Cal. July 17, 2020)....................................................................7

## INTRODUCTION

Plaintiffs Olivia Haynie, Alec Faber, and Ahnaf Rahman (collectively, "Plaintiffs") have moved: (1) to consolidate these and any duplicative later-filed actions, (2) to appoint co-lead interim counsel and local counsel for the putative class, (3) to permit filing of a consolidated amended complaint within fourteen days after the resolution of Plaintiffs' motion, and (4) to set an initial briefing schedule for a subsequent motion to dismiss.  *See* Memorandum in Support of Plaintiffs' Motion to Consolidate Cases, *Haynie* ECF No. 27-1, *Faber* ECF No. 31-1, *Rahman* ECF No. 29-1, at 1 ("Pls.' Consolidation Mot."); [Proposed] Order Granting Plaintiffs' Motion, *Haynie* ECF No. 27-5, *Faber* ECF No. 31-5, *Rahman* ECF No. 29-5.

Defendant Cornell University ("Cornell") does not oppose consolidation or Plaintiffs' proposed schedule for filing a consolidated amended complaint.  The briefing schedule proposed for Cornell's anticipated motion to dismiss is reasonable, provided that the Court authorizes Cornell to proceed with the motion without need for another pre-motion letter articulating the grounds upon which Cornell intends to move.  Cornell also does not oppose the appointment of *an* interim lead counsel and corresponding local counsel for the putative class.  However, Cornell opposes the Consolidation Motion insofar as it seeks to appoint three separate firms as a *co*-lead interim counsel committee, with one firm's representative acting as "chair" solely for making communications with the Court and defense counsel, and a fourth firm to serve as local counsel.

Plaintiffs' proposed interim "co-lead" counsel structure is no structure at all; it simply combines each of the lead firms in the to-be-consolidated cases into a "multi-firm leadership group."  That approach will suffer from all of the redundancies and inefficiencies demonstrated by Plaintiffs' counsel in the seven weeks that passed between when their pre-motion letters were filed on June 29, 2020, announcing their intention to move to consolidate by *July 3*, 2020, and when they ultimately filed the Consolidation Motion on August 18, 2020.  Indeed, in the same filing

where Plaintiffs' counsel state that "each [firm is] more than adequate to represent the class," they admit that difficulties with "private ordering" among counsel resulted in significant delay.  Pls.' Consolidation Mot. 1 n.1, 11, 19, 21.  The challenges of coordinating multiple lead counsel is why the advisory committee's notes to Federal Rule of Civil Procedure 23 caution the Court *against* appointing "ungainly" committees of lead counsel, which often are unnecessarily complicated and result in "overstaffing" and excessive legal fees.

The Court should follow a more standard approach and appoint a single firm as interim class counsel so that one firm can efficiently organize any working attorneys.  If the Court were to approve the proposed committee structure, however, the Court should warn the committee that any duplicative efforts and overstaffing will not be tolerated in any future fee petitions, and order the committee to implement measures tailored to avoid such expenses, as described below.

## BACKGROUND

Plaintiffs filed their complaints against Cornell on April 23 (Haynie), April 25 (Faber), and May 31, 2020 (Rahman).  *See Haynie* ECF No. 1; *Faber* ECF No. 1; *Rahman* ECF No. 1.  Each plaintiff made similar allegations and sought to represent a similar putative class, generally consisting of people who paid Cornell tuition and fees for the Spring 2020 Semester.  *See* Pls.' Consolidation Mot. 5.

On June 24, 2020, Cornell filed pre-motion letters in each case requesting a conference to discuss anticipated motions to dismiss.  *See Haynie* ECF No. 17; *Faber* ECF No. 23; *Rahman* ECF No. 21.  In their responses to the pre-motion letters, counsel for Plaintiffs each indicated that they intended to file a motion for consolidation by July 3, 2020.  *See Haynie* ECF No. 18, at 1; *Faber* ECF No. 24, at 2; *Rahman* ECF No. 22, at 2.  At the joint pre-motion conference on July 8, 2020, counsel for Plaintiffs collectively informed the Court that they had "conferred and [were] working on a consolidated complaint."  *See* Min. Entry for Proceedings on July 8, 2020.  Based on this

representation, the Court directed Plaintiffs to file a consolidated complaint "within a reasonable amount of time." *See id.*

On August 18, 2020—seven weeks after their letters announcing their intentions, and six weeks after they informed the Court that they were working on a consolidated complaint— Plaintiffs filed their Consolidation Motion.[1]  However, Plaintiffs did not include a draft of the consolidated pleading with their motion, and instead requested leave to "file their Consolidated Complaint with the Court on or before fourteen (14) days from the date that the Court enters the consolidation order."  Pls.' Consolidation Mot. 21.  The Consolidation Motion is returnable on October 6, 2020.  As a result, any consolidated complaint will not be filed until late October, at the earliest.  Cornell respectfully submits that appointing the triad of lead counsel to continue on this course as "Co-Lead Interim Class Counsel," and a fourth law firm (the Cherundolo Law Firm, co-counsel for Rahman) as local counsel, will neither encourage judicial economy and efficiency nor avoid unnecessary costs and delay.

## ARGUMENT

### I.     Rule 23 Cautions Against The Appointment Of "Ungainly" And Inefficient Lead Counsel Structures.

Rule 23 authorizes the Court to appoint lead class counsel, including "interim" lead counsel that will serve before a decision on any motion for class certification.  Fed. R. Civ. P. 23(g). "Interim" lead counsel is appropriate where it will "protect the interests of the putative class."  *Id.* at advisory committee's note to 2003 amendment; *see In re Issuer Plaintiff Initial Pub. Offering Antitrust Litig.*, 234 F.R.D. 67, 69-70 (S.D.N.Y. 2006) (denying motion to appoint interim counsel because appointment offered no such protection).  The rules provide the Court with flexibility and

---

[1] The Consolidation Motion seems to have been filed on August 18, 2020, because a status conference requested by Cornell was to be held the next day, before Magistrate Judge Miroslav Lovric, to discuss case management.

discretion in making an appointment that will "represent the best interests of the class." Fed. R. Civ. P. 23(g) advisory committee's note to 2003 amendment. There is no "rule of thumb" as to when a single firm or a group of "collaborating" attorneys should be appointed. *Id.* However, courts should be "alert" to "the risk of overstaffing or an ungainly counsel structure." *Id.* In practice, lead counsel structures consisting of a "committee" of law firms are the exception outside of the largest and most complex litigation, which this litigation is not.

To justify a multi-firm structure, plaintiffs must show a special need for multiple lead counsel, such as "many consolidated actions," "an excessive number of parties," or "complementary skill set[s]." *Hodges v. Bon Secours Health Sys., Inc.*, 2016 WL 4447047, at *2 (D. Md. Aug. 24, 2016) (rejecting multi-firm appointment and appointing single lead interim counsel); *see also In re: Merck & Co., Inc. Sec. Litig.*, 432 F.3d 261, 267 n.4 (3d Cir. 2005) ("If plaintiffs believe that more than one law firm is necessary, they must demonstrate to the Court's satisfaction the need for multiple lead counsel.") (quoting *Miller v. Ventro Corp.*, 2001 WL 34497752, at *13 (N.D. Cal. Nov. 28, 2001)) (alterations omitted); *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2011 WL 5007957, at *3 (S.D.N.Y. Oct. 18, 2011) (expressing skepticism that four firms needed to serve as co-lead counsel and "request[ing] a detailed explanation as to why such a multi-counsel structure would be justified and would not lead to duplicative efforts given the work to be done in this particular case"); *Youngblood v. Family Dollar Stores, Inc.*, 2011 WL 4597555, at *6 (S.D.N.Y. Oct. 4, 2011) (rejecting need for more than one firm to serve as lead counsel upon certification); *Castaneda v. Burger King Corp.*, 264 F.R.D. 557, 573 (N.D. Cal. 2009) ("[F]rom over 35–years of practice and presiding, the undersigned is convinced that it is best to have only one law firm as class counsel. This will greatly reduce the inevitable duplication of effort that flows from two or more firms. . . . Only when there is a special need for another firm should extra counsel be added.").

Numerous courts have rejected multi-firm structures where a special need was not shown. *See, e.g.*, *Hodges*, 2016 WL 4447047, at *2; *In re Parking Heaters Antitrust Litig.*, 310 F.R.D. 54, 57-58 (E.D.N.Y. 2015) (rejecting four-firm committee where the complexities of the case did not warrant "the inevitable redundancies and inefficiencies attendant to a four-firm leadership structure"). This includes the rejection of multi-firm structures resulting from "private ordering."[2]

## II. Plaintiffs Have Not Shown Good Reason To Appoint Three Co-Lead Firms, Rather Than One Firm, Or Explained How The Three Firms Will Avoid Significant Duplication.

Plaintiffs have not shown any "special need" for the multi-firm structure they are proposing. To the contrary, Plaintiffs' counsel tout the respective qualifications and capabilities of each firm as "each more than adequate to represent the class." Pls.' Consolidation Mot. 19. The three proposed co-lead counsel firms—Bursor & Fisher, Carlson Lynch, and Anastopoulo— are not sole practitioners. Bursor & Fisher has approximately 17 lawyers, Carlson Lynch approximately 20, and Anastopoulo approximately 24.[3] Any one of the three firms has the personnel necessary to litigate this single consolidated putative class action, particularly at the pre-class certification stage. *Cappello*, 2016 WL 10744872, at *2.

Plaintiffs primarily assert that adopting their proposed interim counsel structure will "streamline" the proceedings and avoid "duplicative and unnecessary work." Pls.' Consolidation

---

[2] *See Cappello v. Franciscan All., Inc.*, 2016 WL 10744872, at *2 (N.D. Ind. Sept. 8, 2016) (appointing single lead interim counsel where the litigation "remain[ed] in the early stages" and the plaintiffs had not shown why one firm could not serve the members of the putative class); *In re Nest Labs Litig.*, 2014 WL 12878556, at *1-2 (N.D. Cal. Aug. 18, 2014) (rejecting proposed lead interim counsel altogether because the multiple firms involved had already been collaborating and "greater efficiency and clarity [could] only be realized if the Court appoint[ed] *one* firm as interim class counsel").

[3] *See Our Team*, Bursor & Fisher, P.A., https://www.bursor.com/team/ (last visited Sept. 9, 2020); *Our Attorneys*, Carlson Lynch, https://carlsonlynch.com/attorney-profiles/ (last visited Sept. 9, 2020); *Our Attorneys*, Anastopoulo Law Firm, https://www.akimlawfirm.com/about-us/attorneys/ (last visited Sept. 9, 2020).

Mot. 18-19.  That argument has it backwards.  Appointing a single firm is the way to streamline the proceedings and avoid duplication; appointing multiple firms as co-lead counsel makes "redundancies and inefficiencies" "inevitable."  *In re Parking Heaters Antitrust Litig.*, 310 F.R.D. at 57-58.  Indeed, the significant delay in Plaintiffs' motion to consolidate, as outlined above, demonstrates just how unwieldy it will be to appoint four firms as co-lead counsel, each of which will need to analyze issues separately and then reach consensus on all interrelated case decisions.  Nor does the alleged "novelty" of Plaintiffs' theory—that they can represent an entire class of Cornell students purporting to require tuition refunds in pandemic circumstances covering one semester of one academic year—support a committee of lead counsel.  The novelty speaks to the weakness of the claims, not to the complexities of the actual litigation.  In short, Plaintiffs have not carried their burden to provide a compelling reason why a multi-firm structure is necessary.

Plaintiffs' suggestion that the "Anastopoulo firm" serve "as the Chair of a three-firm leadership committee with Anastopoulo's Roy T. Willey IV as point partner" is no solution.  Without doubt, it is better to have a designated individual to communicate with the Court and Cornell, but these specific tasks represent only a small portion of the future workflow in any consolidated action.  It will be necessary to investigate, manage, and prosecute the case day by day, and it is during these tasks that the inefficiency and duplication inherent in a committee leadership structure will inevitably occur.

Finally, cases cited by Plaintiffs in support of their proposed committee structure actually highlight why such a structure is not appropriate here.  *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation* involved decade-long multi-district litigation brought on behalf of a putative class of over twelve million merchants nationwide.  2016 WL 8138988, at *2-

3 (E.D.N.Y. Nov. 30, 2016).[4]  *In re Air Cargo Shipping Services Antitrust Litigation* also involved multi-district litigation, in that case over alleged global price-fixing of air cargo by domestic and foreign airlines.  240 F.R.D. 56, 58-59 (E.D.N.Y. 2006).[5]  The cases combined into that MDL were brought by over seventy law firms, four of which were appointed to lead the MDL.  *Id*.  *In re Millennial Media, Inc. Securities Litigation* was decided under the Private Securities Litigation Reform Act, which has specific lead plaintiff and lead counsel appointment provisions not applicable here.  87 F. Supp. 3d 563, 569-72 (S.D.N.Y. 2015).  That case also involved typicality concerns—not raised by Plaintiffs in this case—which required the appointment of multiple lead plaintiffs and counsel.  *Id*. at 570.  In the only tuition reimbursement putative class action cited by Plaintiffs, *see* Pls.' Consolidation Mot. 8—*In re University of Southern California Tuition & Fees COVID-19 Refund Litigation* (C.D. Cal. No. 2:20-cv-4066-DMG-PVC)—the court appointed a three-firm co-lead interim counsel structure when consolidating four class actions, but only after finding that each firm brought unique resources and when no party objected to the committee structure.[6]

By contrast, the firms under consideration here have not identified any unique but necessary resources that one lacks and another must supply.  Each firm has represented that it is *independently* capable of handling class action and consumer protection matters of this nature, *see* Pls.' Consolidation Mot. 11-19; each provided a Firm Resume detailing firm resources and experience, *see id*. Exhs. A, B, C; and each has demonstrated the ability to articulate arguments in

---

[4] *See In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 18 (E.D.N.Y. 2019) (describing background of case).

[5] *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 2008 WL 5958061, at *1 (E.D.N.Y. Sept. 26, 2008) (R&R) (describing background of case).

[6] *See* Order re: Pl. Christina Diaz's Mot. to Stay or Consolidate [18] & Pls. Latisha Watson & J. Julia Greenberg's Joint Mot. to Consolidate [30], at 10, ECF No. 54, *Diaz v. Univ. of S. Cal.*, No. 20-cv-4066-DMG-PVC (C.D. Cal. July 17, 2020).

support of their proffered claims, which Plaintiffs acknowledge share "common parties" and "common if not identical, issues of law and fact," Pls.' Consolidation Mot. 4-6.

For these reasons, Cornell respectfully submits the Court should appoint a single firm as lead interim counsel.  Cornell takes no position on which of the three firms should be appointed, (given that *pro hac vice* admissions have already been granted to multiple attorneys in each of the three firms), or whether local counsel should also be appointed in some capacity.

**III.**  **If The Court Permits A Multi-Firm Leadership Structure, It Should Take Steps To Ensure That Overstaffing And Duplication Do Not Occur.**

If, in the Court's discretion, it deems a multi-firm co-lead counsel structure to be appropriate in this case, Cornell respectfully requests that the Court affirmatively order Plaintiffs to take steps to constrain duplication during the investigation, management, and prosecution of claims, and to avoid inefficiency wherever possible.  Specifically, the Court should impose, at minimum, the following requirements on any co-lead interim counsel:

1. designate a chairperson with responsibility for overseeing the division of work and for exercising final strategic authority;

2. designate a single individual with responsibility for communications with Cornell and the Court (as Plaintiffs have already proposed in the Consolidation Motion);

3. adopt written protocols governing the authorization of work tasks, rules for timekeeping, monthly submission of time records, pre-approval of expenses incurred, and other administrative tasks to ensure the litigation is prosecuted without unnecessary effort, duplication, or cost;

4. require all billing counsel to record and maintain daily, contemporaneous time records in increments of no larger than one-tenth of an hour, recording each billed activity separately, and submit time entries to the Court at least once a month;

5. require all billing counsel to record hourly rates for all attorneys and staff and prepare and record billing records at present rates;

6. use a remote document review system, if applicable, and put in place procedures to monitor document review to ensure efficiency; and

7. review, as the designated chairperson, all billing and expense records, including to ensure that duplicative work is not performed and to not submit billing records with duplicative or unnecessary entries.

The Southern District of Florida recently imposed each of these requirements when it appointed co-lead interim counsel in the University of Miami tuition refund litigation. Order Appointing Co-Lead Interim Class Counsel 3-7, ECF No. 48, *In re: University of Miami COVID-19 Tuition & Fee Refund Litig.*, No. 20-cv-60851-AHS (S.D. Fla. Aug. 19, 2020); *see also Cappello v. Franciscan All., Inc.*, 2017 WL 781609, at *4 (N.D. Ind. Feb. 28, 2017) (requiring submission of periodic billing records in order to monitor any duplication among the firms).[7]

These best practices will help reduce, to the extent possible, the "substantially increased costs" that stem from committee lead counsel structures. *Manual for Complex Litigation, Fourth*, § 10.221 (2004); *see also id*. § 14.212 (encouraging courts to set "guidelines at the outset of the litigation" about appropriate staffing, including "the number of attorneys [and levels] who may charge for time" on various activities); *id*. § 14.213 (explaining that courts "should address [the issue of time records] early in the case by directing counsel to develop record-keeping procedures to facilitate review," including "contemporaneous records that show . . . the time spent on each discrete activity, and the nature of the work performed"); *id*. § 14.214 (suggesting the submission of "periodic [fee] reports"). Although Cornell, any class, and the Court will have an opportunity to object to overstaffing and duplication in any future fee petitions, it is more efficient as well as more practical for all parties and the Court to implement these requirements now, before the duplicative work is done.

---

[7] In the University of Miami litigation, no party opposed the appointment of multiple firms as co-lead interim counsel. *See* Def.'s Resp. to Pls.' Joint Mot. for Appointment of Co-Lead Interim Class Counsel, ECF No. 42, *In re: Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*, No. 20-cv-60851-AHS (S.D. Fla. Aug. 7, 2020).

## <u>CONCLUSION</u>

For the reasons stated herein, Cornell respectfully requests the Court deny Plaintiffs' request for appointment of multiple firms as interim class counsel, select one law firm to serve that role, and grant such other relief as the Court deems necessary and appropriate under the facts and circumstances of this case, including consolidation with a specific deadline for filing the operative consolidated pleading.

Dated: September 10, 2020

/s/ Ishan K. Bhabha
Ishan K. Bhabha (*pro hac vice*)
Lauren J. Hartz (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001-4412
(202) 639-6000
ibhabha@jenner.com
lhartz@jenner.com

Paul B. Rietema (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
(312) 840-7208
prietema@jenner.com

Valerie Cross Dorn (No. 505158)
CORNELL UNIVERSITY
235 Garden Avenue
300 CCC Building
Ithaca, NY 14853
vlc1@cornell.edu

*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing *Defendant Cornell University's Partial Opposition to Plaintiffs' Motion to Consolidate Cases, Appoint Bursor & Fischer PA, Carlson Lynch LLP, and Anastopoulo Law Firm as Co-Lead Interim Class-Counsel, and Set an Initial Schedule* was served on counsel of record via the Court's CM/ECF filing system on September 10, 2020.

By: /s/ Ishan K. Bhabha
Ishan K. Bhabha (*pro hac vice*)

11