**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**EMILIO ESPEJO,** *individually and on behalf of*
*all others similarly situated*; **ALEC FABER,**
*individually and on behalf of all others similarly*
*situated*; **and AHNAF RAHMAN,** *individually and*
*on behalf of all others similarly situated,*

                         **Plaintiffs,**

        **vs.**                                   **3:20-CV-467**
                                                 **(MAD/ML)**

**CORNELL UNIVERSITY,**

                         **Defendant.**
_____

**APPEARANCES:**                       **OF COUNSEL:**

**CHERUNDOLO LAW FIRM, PLLC**      **JOHN C. CHERUNDOLO, ESQ.**
AXA Tower One, 15th Floor
100 Madison Street
Syracuse, New York 13202
Attorneys for Plaintiffs

**ANASTOPOULO LAW FIRM, LLC**      **ROY T. WILLEY, IV, ESQ.**
32 Ann Street                            **ERIC POULIN, ESQ.**
Charleston, South Carolina 29403    **BLAKE G. ABBOTT, ESQ.**
Attorneys for Plaintiffs

**BURSOR & FISHER, P.A.**            **MAX STUART ROBERTS, ESQ.**
888 7th Avenue                      **PHILIP LAWRENCE FRAIETTA, ESQ.**
3rd Floor
New York, New York 10106
Attorneys for Plaintiffs

**BURSOR & FISHER, P.A.**            **SARAH WESTCOT, ESQ.**
701 Brickell Avenue
Suite 1420
Miami, Florida 33131
Attorneys for Plaintiffs

1

**TOPTANI LAW PLLC**                   **EDWARD TOPTANI, ESQ.**
375 Pearl Street
Ste 1410
New York, New York 10038
Attorneys for Plaintiffs

**LYNN LAW FIRM, LLP**                 **KELSEY W. SHANNON, ESQ.**
M&T Bank Building
101 South Salina Street, Suite 750
Syracuse, New York 13202
Attorneys for Plaintiffs

**CARLSON LYNCH, LLP**                 **EDWARD CIOLKO, ESQ.**
1133 Penn Avenue                       **GARY F. LYNCH, ESQ.**
Ste 5th Floor                          **JAMES PATRICK MCGRAW, III, ESQ.**
Pittsburgh, Pennsylvania 15222
Attorneys for Plaintiffs

**CARLSON LYNCH, LLP**                 **KATHLEEN P. LALLY, ESQ.**
111 W. Washington Street
Suite 1240
Chicago, Illinois 60602
Attorneys for Plaintiffs

**CORNELL UNIVERSITY**                 **VALERIE L. DORN, ESQ.**
**OFFICE OF COUNSEL**                  **ADAM PENCE, ESQ.**
300 CCC Building
235 Garden Avenue
Ithaca, New York 14853
Attorneys for Defendant

**JENNER, BLOCK LAW FIRM -**           **ISHAN KHARSHEDJI BHABHA, ESQ.**
**DC OFFICE**                          **LAUREN J. HARTZ, ESQ.**
1099 New York Avenue, Suite 900
Washington, DC 20001
Attorneys for Defendant

**JENNER & BLOCK LLP**                 **PAUL RIETEMA, ESQ.**
353 N. Clark Street
Chicago, Illinois 60654
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On April 23, 2020, Olivia Haynie filed this putative class action against Defendant Cornell University alleging breach of contract, unjust enrichment, and conversion stemming from Cornell's decision to close its campus and transition to online learning in response to the COVID-19 pandemic.  *See* Dkt. No. 1.  On April 25, 2020 and May 31, 2020, Plaintiffs Faber and Rahman, respectively, filed nearly identical class action complaints against Cornell University. *See Faber v. Cornell*, No. 3:20-CV-471, Dkt. No. 1 (N.D.N.Y.); *Rahman v. Cornell University*, No. 3:20-CV-592, Dkt. No. 1 (N.D.N.Y.).  On August 18, 2020, Plaintiffs filed a motion to consolidate these actions.  *See* Dkt. No. 27.  The motion to consolidate was granted, and, soon thereafter, Plaintiffs filed an amended consolidated complaint.  *See* Dkt. Nos. 32, 33.  In the amended complaint, Plaintiffs added Emilio Espejo as a Plaintiff to this action.  *See* Dkt. No. 33. On October 29, 2020, Plaintiff Haynie voluntarily dismissed her claim.  *See* Dkt. Nos. 36, 37.

On November 10, 2020, Defendant filed a motion to dismiss Plaintiffs' complaint in its entirety.  *See* Dkt. No. 38.  Plaintiffs oppose the motion.  *See* Dkt. No. 39.  At the parties' request, the Court held oral argument on the motion on February 8, 2021.  Presently before the Court is Defendant's motion to dismiss.  For the following reasons, Defendant's motion is granted in part and denied in part.

## II. BACKGROUND

Plaintiffs bring this case as a result of Cornell's decision not to issue certain refunds for the Spring 2020 semester after all classes were transitioned to an online format, most campus buildings were closed, and students were required to leave campus due to the COVID-19 pandemic.  Plaintiffs are students, or parents of students, who were enrolled at Cornell University during the Spring 2020 term.  *See* Dkt. No. 33 at ¶¶ 9-11, 18.

Cornell's Spring 2020 semester began on January 21, 2020.  *See id.* at ¶ 36.  As a result of the COVID-19 pandemic, Defendant announced on March 13, 2020, that it was suspending all classes effective immediately.  *See id.* at ¶ 39.  The same day, Cornell announced that all undergraduate and most professional students were required to leave campus no later than March 29, 2020, unless the students received an exception.  *See id.* at ¶ 40.  The announcement also "strongly encouraged" students to leave campus prior to the deadline.  *See id.*  Although not alleged in the complaint, Defendant states that online instruction of students began on April 6, 2020.  *See* Dkt. No. 38-1 at 11.

Cornell has since announced that it has, or soon will, issue refunds on room and board fees to be pro-rated from the March 29, 2020 closure.  *See id.* at ¶ 50.  However, Cornell has refused to offer refunds on tuition or other fees for the Spring 2020 term.  *See id.* at ¶¶ 47-49.  Plaintiffs bring this action on behalf of all people who paid tuition, fees, and room and board for – or on behalf of – students enrolled in classes for the Spring 2020 term.  *See id.* at ¶ 55.

### III. DISCUSSION

**A.    Legal Standard**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the

pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

## B.   Plaintiff Espejo's Standing

Under Article III of the United States Constitution, a federal court may only exercise subject matter jurisdiction over cases in which the plaintiff has standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff bears the burden of establishing the three "irreducible constitutional minimum" elements of Article III standing. *See id.* "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, ⸺ U.S. ⸺, 136 S. Ct. 1540, 1547 (2016).

To establish an "injury in fact," a plaintiff must show that he or she suffered "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical."'" *Lujan*, 504 U.S. at 560 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). To be "particularized," an injury must affect the plaintiff "in a personal and individual way," and to be "concrete" an injury "must be 'de facto'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548. As for the "actual or imminent" requirement, a plaintiff must allege a non-speculative injury. *See Lujan*, 504 U.S. at 583-84.

Here, Plaintiff Espejo's standing is based solely on the fact that he paid tuition for his child. *See* Dkt. No. 33 at ¶ 9; Dkt. No. 39 at 31-32. Plaintiffs do not allege that Plaintiff Espejo's child is a minor, that he directly contracted with Cornell, or that he is an intended third-party beneficiary. *See generally* Dkt. No. 33. Without such allegations, Plaintiff Espejo cannot demonstrate injury-in-fact. Therefore, this Court, as have many others considering similar issues, finds that Plaintiff Espejo does not have standing to advance his claim. *See Bergeron v. Rochester Inst. of Tech.*, No. 20-CV-6283, 2020 WL 7486682, *3-4 (W.D.N.Y. Dec. 18, 2020); *Salerno v. Fla. S. Coll.*, ⸺ F. Supp. 3d ⸺, 2020 WL 5583522, *4 (M.D. Fla. Sept. 16, 2020); *Lindner v. Occidental Coll.*, No. CV-20-8481, 2020 WL 7350212, *6 (C.D. Cal. Dec. 11, 2020); *Doe v. Emory Univ.*, No. 20-CV-2002, 2021 WL 358391, *2-3 (N.D. Ga. Jan. 22, 2021).

## C.      Breach of Contract Claims

"To state a claim for breach of contract under New York law, 'the complaint must allege: [(1)] the formation of a contract between the parties; [(2)] performance by the plaintiff; [(3)] failure of defendant to perform; and [(4)] damages.'" *Nick's Garage, Inc. v. Progressive Cas. Ins.*

*Co.*, 875 F.3d 107, 114 (2d Cir. 2017) (quotation omitted).  "Under New York law, the initial

interpretation of a contract 'is a matter of law for the court to decide'" and where the contract is

unambiguous, a court is "'required to give effect to the contract as written.'"  *K. Bell & Assocs.,*

*Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996) (citations omitted).  "In reviewing a

motion to dismiss for a breach of contract claim pursuant to Rule 12(b)(6) [of the Federal Rules of

Civil Procedure] the Court may interpret a contract properly before it and should 'strive to resolve

any contractual ambiguities in the non-moving party's favor.'"  *Gerdau Ameristeel US Inc. v.*

*Ameron Int'l Corp.*, No. 13-CV-7169, 2014 WL 3639176, *3 (S.D.N.Y. July 22, 2014) (quoting

*Int'l Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).  "However,

the court is 'not constrained to accept the allegations of the pleading in respect to the construction

of the contract.'"  *Id.*

　　　"Under New York Law, 'a contract implied in fact may result as an inference from the

facts and circumstances of the case, although not formally stated in words, and is derived from the

"presumed" intention of the parties as indicated by their conduct.'"  *Leibowitz v. Cornell*

*University*, 584 F.3d 487, 506-07 (2d Cir. 2009) (quoting *Jemzura v. Jemzura*, 36 N.Y.2d 496,

503-04 (1975)).  An implied contract can have the same binding authority as an express contract,

so long as the implied contract satisfies the required "'elements [of] consideration, mutual assent,

legal capacity and legal subject matter.'"  *Id.* at 507 (quoting *Maas v. Cornell Univ.*, 94 N.Y.2d

87, 94 (1999)); *Brown v. St. Paul Travelers Co., Inc.*, 331 Fed. Appx. 68, 70 (2d Cir. 2009)

(holding that an implied contract "'is just as binding as an express contract arising from declared

intention, since in the law there is no distinction between agreements made by words and those

made by conduct'") (quoting *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.,*

*Inc.*, 448 F.3d 573, 582 (2d Cir. 2006)).

"Under New York law, an implied contract is formed when a university accepts a student for enrollment: if the student complies with the terms prescribed by the university and completes the required courses, the university must award him a degree." *Papelino v. Albany College of Pharm. of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) (citing *Carr v. St. John's Univ.*, 17 A.D.2d 632, 633 (2d Dep't 1962), *aff'd*, 12 N.Y.2d 802 (1962); *Clarke v. Trs. of Columbia Univ.*, No. 95 Civ. 10627, 1996 WL 609271, *5 (S.D.N.Y. Oct. 23, 1996)). "However, '[t]he application of contract principles to the student-university relationship does not provide judicial recourse for every disgruntled student.'" *Ford v. Rensselaer Polytechnic Inst.*, No. 20-CV-470, 2020 WL 7389155, *3 (N.D.N.Y. Dec. 16, 2020) (quoting *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 359 (N.D.N.Y. 2014)). "Instead, 'only specific promises ... in a school's bulletins, circulars, and handbooks, which are material to the student's relationship with the school,' are enforceable." *Id.* (quoting *Keefe v. N.Y. Law Sch.*, 897 N.Y.S.2d 94, 95 (1st Dep't 2010)); *see also Hassan v. Fordham Univ.*, No. 20-CV-3265, 2021 WL 293255, * 4 (S.D.N.Y. Jan. 28, 2021); *Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654, 654 (2d Dep't 1987). "In other words, '[g]eneral policy statements and broad and unspecified procedures and guidelines will not suffice.'" *Ford*, 2020 WL 7389155, at *3 (quoting *Doe v. Syracuse Univ.*, 440 F. Supp. 3d 158, 175 (N.D.N.Y. 2020)). "An implied promise must be determined 'cautiously,' not by custom or strained interpretation ...." *Hassan*, 2021 WL 293255, at *5 (quoting *Gertler v. Goodgold*, 107 A.D.2d 481, 485 (1st Dep't 1985)).

### 1. Tuition

During oral argument, both parties agreed that, under New York law, an implied contractual relationship exists between the parties. The dispute surrounds the extent of the parties'

agreement.[1]  Cornell argues that Plaintiffs' breach of contract claim based on Cornell's decision

not to refund tuition fails because Plaintiffs cannot identify a sufficiently specific promise for in-

person instruction or a refund absent such instruction.  *See* Dkt. No. 38-1 at 14.  In opposition,

Plaintiffs argue that a number of written and oral statements from Cornell's website, academic

catalogs, student handbooks, correspondence, marketing materials, and other circulars, bulletins

and publications combine to create a specific promise for in-person instruction.  *See* Dkt. No. 33

at ¶ 73; Dkt. No. 39 at 12-13.

     In support of their claim, Plaintiffs point to Cornell's Class Roster, which indicated

whether a course is scheduled to be taught in-person or online and included a building and

classroom assignment.  *See* Dkt. No. 33 at ¶¶ 12-13, 26-27, 111-13.  Such allegations have been

found insufficient to constitute a specific promise for in-person instruction.  *See Hassan*, 2021

WL 293255, at *5-6.  Plaintiffs also rely on Cornell's academic policies, specifically pointing to a

section entitled "Attendance and Class Meeting Times."  *See* Dkt. No. 33 at ¶ 28.  However, the

document referenced by Plaintiffs makes no promise that classes must be in-person.  *See id.*  In

fact, even the quoted portions of the policy lack any reference to in-person classes.  *See id.*

Plaintiffs quote a portion of the policy which states that "[s]tudents are expected to be present

throughout each semester at all *meetings of classes* for which they are enrolled."  *See id.*

---

[1] Cornell also attempts to construe Plaintiffs' breach of contract claim as an educational
malpractice claim.  *See* Dkt. No. 38-1 at 23.  As the parties are aware, educational malpractice
claims are impermissible under New York law.  *See Papelino*, 633 F.3d at 93.  Despite Cornell's
attempt to construe Plaintiffs' claim as alleging educational malpractice, identical claims
throughout this circuit have not been found as such.  *See Hassan*, 2021 WL 293255, at *3
(holding that "Plaintiff's claims are not barred by the educational malpractice doctrine, because
they are sufficiently grounded in whether an alleged promise for educational services was made
and breached"); *Ford*, 2020 WL 7389155, at *6.  At this point, the Court does not construe
Plaintiffs' claims as alleging educational malpractice.

(emphasis added).  Noticeably absent is the promise that the "meetings of classes" must be held in person.

Plaintiffs also cite to various marketing materials which discuss campus activities and groups; the beauty of Ithaca, New York and the Finger Lakes Region; diversity among Cornell's population; campus amenities, including access to library spots, study rooms, cafes, and dining halls; student/teacher ratios; and sports and intramural leagues.  *See id.* at ¶¶ 23, 80, 81-86, 98-108.  Courts considering similar allegations regarding access to libraries and campus activities have found that such statements do not constitute a promise for in-person instruction.  *See Oyoque v. DePaul Univ.*, No. 20 C 3431, 2021 WL 679231, *4 (N.D. Ill. Feb. 21, 2021).  These statements, which seem to be intended to inform potential students of available amenities, do not amount to a "contractually-enforceable *promise* to provide them irrespective of changing or unanticipated circumstances."  *See id.*

Plaintiffs also cite to vague statements from Cornell or members of its staff to support their claim.  For example, Plaintiffs attribute the following statement to Cornell: "[W]e don't separate life and education.  At Cornell, living is learning."  *See* Dkt. No. 33 at ¶ 87.  Plaintiffs also cite to a letter from Cornell's Associate Provost of Enrollment, which states: "I look forward to having you join[] with the students and faculty here who, together, contribute to the tradition of excellence, intellectual ingenuity, and diversity that has always distinguished Cornell University." *See id.* at ¶ 94.  The Court finds that neither of these statements make any promise that instruction will occur in-person.

Although the Court is not persuaded that the vast majority of Plaintiffs' allegations give rise to a contractual agreement for in-person instruction, one of Plaintiffs' allegations is notable. In their complaint, Plaintiffs cite to the following portion of Cornell's mission statement:

"Cornell's mission is to discover, preserve, and disseminate knowledge; produce creative work; and promote a culture of broad inquiry throughout and beyond the Cornell community ... Within the context of great diversity, a Cornell education comprises formal and informal learning experiences in the classroom, on campus, and beyond."[2]  *See id.* at ¶ 77.

In listing what comprises a Cornell education, Cornell specifically includes "experiences in the classroom" and "on campus."  Courts considering similar allegations have found that the plaintiffs plausibly alleged a promise for in-person instruction.  *See McCarthy v. Loyola Marymount Univ.*, No. 20-CV-4668, 2021 WL 268242, *4 (C.D. Ca. Jan. 8, 2021) (citing *Bergeron*, 2020 WL 7486682, at *7-8; *Ford*, 2020 WL 7389155, at *4) (finding that "Defendant's publications refer to benefits of its 'comprehensive, on-campus educational experience'"); *see also Ford*, 2020 WL 7389155, at *4-5.

Although motions such as these are currently being decided across the country, there is very little precedent applying New York contract law to these issues.  In support of its motion, Defendant cites to the recent decision in *Hassan*, 2021 WL 293255, at *5-7.  The plaintiffs in *Hassan* relied upon very similar allegations with respect to the promise to provide in-person instruction.  *See id.* at *5.  Specifically, the plaintiffs pointed to publications listing available courses that detailed the times and locations of those classes; a search filter on the course catalog which allowed students to search for courses by instruction mode; and an attendance policy which required students to attend every class for each course.  *See id.*  The court, however, found that none of these statements constituted a specific promise to provide in-person instruction.  *See id.* at

---

[2] Although the Court accepts this factual allegation as true, as it must, the Court notes that it has not been provided a copy of the entire mission statement or any information on the date when it became effective.  Interestingly, the language from the mission statement went unmentioned by the parties in briefing on this motion and at oral argument.

*6.  Here, Plaintiffs rely upon essentially identical allegations with one important difference: Cornell's mission statement which specifically defines a "Cornell education" as including learning experiences "in the classroom" and "on campus[.]"  Cornell's mission statement makes this case factually distinguishable from *Hassan* and more akin to the facts in *Ford*, 2020 WL 7389155, at *4-5.

In *Ford*, Rensselaer Polytechnic Institute ("RPI") operated a program that relied on a "time-based clustering and residential commons program" and that required students to be on campus for specific portions of the program.  *See id.* at *4.  Additionally, RPI issued a plan in which they made a number of assertions that began with the phrase "we will," and were ultimately found to be plausible allegations of a promise for in-person instruction.  *See id.* at *4-5. Certainly, Cornell has not made as many assertions with respect to in-person education as RPI did, nor is there any indication that Cornell requires students to reside on campus for any part of their education.  However, both this case and *Ford* include an explicit statement from the university indicating that the education for which Plaintiffs paid tuition includes an on-campus component.

At this early stage, drawing all reasonable inferences in Plaintiffs' favor, the Court finds that Plaintiffs have plausibly alleged a specific promise for in-person instruction.  Accordingly, Cornell's motion to dismiss is denied with respect to this claim.

### 2. Room and Board

Plaintiffs allege that the parties entered into a contract which provided that Plaintiffs would pay fees for room and board in exchange for access to on-campus housing and/or dining for the Spring 2020 semester.  *See* Dkt. No. 33 at ¶ 176.  Plaintiffs further allege that they upheld their end of the bargain, but that Defendants constructively evicted them beginning on March 13,

2020. *See id.* at ¶¶ 177-78.  However, as Plaintiffs acknowledge, Defendant has provided refunds for room and board pro-rated from March 29, 2020.  *See id.* at ¶¶ 178-184.  It is Plaintiffs' position that they should receive refunds pro-rated from the date that they were constructively evicted: March 13, 2020.  *See id.*

The Court notes that although students were encouraged to leave campus as soon as possible, they were not required to leave until March 29, 2020.  *See id.* at ¶¶ 40, 181-84.  Such encouragement, absent allegations that Cornell attempted to prevent Plaintiffs from accessing their housing before March 29, 2020, is not sufficient to constitute a breach of contract.  As there is no such allegation in this case, Plaintiffs have not sufficiently alleged breach with respect to this claim.  *See In re Boston Univ. COVID-19 Refund Litig.*, — F. Supp. 3d —, 2021 WL 66443, *3 (D. Mass. 2021).  Accordingly, Cornell's motion to dismiss Plaintiffs' breach of contract claim is granted with respect to the room and board fees.

### 3. Fees

In the complaint, Plaintiffs allege that they were charged a mandatory Student Activity Fee and other optional fees such as fitness center fees and student health fees.  *See* Dkt. No. 33 at ¶ 147.  Plaintiffs further claim that they entered into a contract with Cornell which provided that, in exchange for payment of the fees, Cornell would provide or make available the services, access, and/or programs related to those fees.  *See id.* at ¶ 152.  Finally, Plaintiffs allege that Cornell breached those agreements by failing to provide access to those facilities and services for a portion of the Spring 2020 semester but has refused to offer refunds of those fees.  *See id.* at ¶¶ 153-58.

Defendant, citing *Chong v. Northeastern University*, — F. Supp. 3d —, 2020 WL 5847626, * 4 (D. Mass. 2020), argues that Plaintiffs' allegations regarding the fees are too vague

and conclusory to survive a motion to dismiss.  *See* Dkt. No. 38-1 at 22.  It is true that the

plaintiffs in *Chong* alleged the amount of each fee.  *See Chong*, 2020 WL 5847626, at *1.  This,

however, was not the dispositive issue with respect to the plaintiffs' breach of contract claims.

*See id.* at *3-4.  Rather, the *Chong* court examined whether the fees at issue supported certain

facilities during the academic term.  *See id.* at *4.  The court specifically distinguished fees which

were intended to "'support' certain facilities during terms for which ... students are enrolled in

classes" from fees which permitted the student to "gain access to ... [an] on-campus facility or

resource ...."  *See id.*  In fact, the court denied the defendant's motion to dismiss with respect to

fees that give students access to facilities and services.

Here, Plaintiffs allege that the fees at issue provide students with "services, access,

benefits, and programs for which the fees were described and billed."  *See* Dkt. No. 33 at ¶¶ 150,

152.  For example, the complaint alleges the following: "the Cornell Fitness Center []Membership

'provides *access* to all group fitness classes and our five fitness centers.'"  *See id.* at ¶ 151

(emphasis added).  Accordingly, drawing all reasonable inferences in Plaintiffs' favor, the Court

finds that Plaintiffs have plausibly alleged a breach of contract claim with respect to these fees.

*See Chong*, 2020 WL 5847626, at *4; *Ford*, 2020 WL 7389155, at *7.

**D.     Unjust Enrichment**

To assert a viable claim for unjust enrichment under New York law, a claimant must

allege facts establishing: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3)

that equity and good conscience require restitution."  *Kaye v. Grossman*, 202 F.3d 611, 616 (2d

Cir. 2000) (internal quotations omitted).  Under New York law, there can be no cause of action

for unjust enrichment when there is a valid contract governing the same subject matter between

the parties.  *See Clark–Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987)

(citations omitted).  "[T]he existence of a valid and binding contract governing the subject matter at issue in a particular case does act to preclude a claim for unjust enrichment[.]"  *Network Enters., Inc. v. Reality Racing, Inc.*, No. 09 Civ. 4664, 2010 WL 3529237, *7 (S.D.N.Y. Aug. 24, 2010) (quoting *Law Debenture v. Maverick Tube Corp.*, No. 06 Civ. 14320, 2008 WL 4615896, *12 (S.D.N.Y. Oct. 15, 2008) (collecting cases)).  "Courts have permitted pleading in the alternative in the face of a written agreement, however, when there is a dispute as to the agreement's validity or enforceability."  *Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 195 (S.D.N.Y. 2009) (citations omitted).

The Federal Rules of Civil Procedure permit alternative pleading at this stage of the litigation.  *See* Fed. R. Civ. P. (8)(d) ("A party may set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones").  Thus, "at this early stage of the litigation, it is reasonable to permit plaintiffs to plead unjust enrichment claims in the alternative to their breach of contract claims."  *Casey v. Citibank*, 915 F. Supp. 2d 255, 265 (N.D.N.Y. 2013) (citation omitted).  However, Defendant also argues that Plaintiffs have not sufficiently alleged an unjust enrichment claim.  *See* Dkt. No. 38-1 at 27.

When considering an unjust enrichment claim, "[t]he mere fact that a benefit is bestowed on a defendant is insufficient."  *Hassan*, 2021 WL 293255, at *10 (citing *Clark v. Daby*, 751 N.Y.S.2d 622, 623 (3d Dep't 2002)).  "When assessing considerations of equity and justice, courts generally consider, among other things, 'whether the defendant's conduct was tortious or fraudulent.'"  *Id.* (quoting *Clark*, 751 N.Y.S.2d at 624).

Here, Plaintiffs allege that Defendant is in a much better position to bear the financial burden of the COVID-19 pandemic than the students.  However, Plaintiffs have not alleged, nor can the Court conclude, that Defendant's refusal to refund tuition and fees and offer only partial

15

refunds of room and board was tortious or fraudulent. *See id.* at *10-11. Accordingly, the Court finds that Plaintiffs have not sufficiently pleaded that equity and good conscience require restitution. Thus, Defendant's motion to dismiss Plaintiffs' unjust enrichment claims is granted.

**E.    Conversion**

Under New York law, "[c]onversion is 'an unauthorized assumption and exercise of the right of ownership over [property] belonging to another to the exclusion of the owner's rights.'" *Traffix v. Herold*, 269 F. Supp. 2d 223, 228 (S.D.N.Y. 2003) (quotation omitted). Specifically, a conversion action requires that the plaintiff has legal ownership or an immediate superior right of possession to the property he seeks to recover and that the defendant exercised an unauthorized dominion over that property "'to the alteration of its condition or to the exclusion of the plaintiff's rights.'" *Ancile Inv. Co. Ltd. v. Archer Daniels Midland Co.*, 784 F. Supp. 2d 296, 311 (S.D.N.Y. 2011) (quotation and other citation omitted). However, a conversion claim is not actionable where the claim is duplicative of a breach of contract claim. *See Wechsler v. Hunt Health Sys.*, 330 F. Supp. 2d 383, 431 (S.D.N.Y. 2004). "In determining whether a conversion claim is duplicative of a breach of contract claim, courts look both to the material facts upon which each claim is based and to the alleged injuries for which damages are sought." *AD Rendon Communs., Inc. v. Lumina Ams. Inc.*, No. 04-CV-8832, 2007 WL 2962591, *5 (S.D.N.Y. Oct. 10, 2007).

When money, rather than a chattel, is the property at issue, it must be specifically identifiable. *See 9310 Third Ave. Assoc., Inc. v. Schaffer Food Serv. Co.*, 210 A.D.2d 207, 208 (2d Dep't 1994) (citation omitted). If the "allegedly converted money is incapable of being 'described or identified in the same manner as a specific chattel' ..., it is not the proper subject of a conversion action." *Id.* (internal citation omitted).

Here, Cornell correctly argues that Plaintiffs' conversion claim must fail because it is based on the same allegations as those alleged in their breach of contract claim. *See* Dkt. No. 38-1 at 26. Plaintiffs allege that they paid "tuition fees and others" and that Cornell failed to provide the services for which Plaintiffs paid. *See* Dkt. No. 33 at ¶¶ 205-08. The relief sought for this claim is the return of the paid tuition and fees. *See id.* at ¶ 214. These allegations and the relief sought are the same as those underlying Plaintiffs' breach of contract claims. *See id.* at ¶¶ 67-129, 145-59, 174-87. Thus, Plaintiffs' conversion claim must be dismissed. *See Hassan*, 2021 WL 293255, at *11-12; *AD Rendon Communs., Inc.*, 2007 WL 2962591, at *5 (collecting cases).

Alternatively, Plaintiffs have not plausibly alleged that the converted money is specifically identifiable. Although Plaintiffs allege that such payments were made to a specific fund for specific and identifiable purposes, this allegation is not plausible. *See* Dkt. No. 33 at ¶ 205. As Cornell correctly notes, Plaintiffs have failed to identify a cognizable property interest for purposes of a conversion claim. Certainly, an "in-person, on campus experience" is the sort of intangible property which may not serve as the basis of a conversion claim. *See Hassan*, 2021 WL 293255, at *11 (citing *Sun Gold, Corp. v. Stillman*, 946 N.Y.S.2d 24, 25 (1st Dep't 2012)). Additionally, the funds paid by Plaintiffs are not sufficiently tangible property under these facts. *See id.* (finding that the tuition and fees for in-person instruction are indistinguishable from those used to cover remote instruction after the onset of the pandemic); *see also* Dkt. No. 40 at 11-12 (citing *Salerno*, 2020 WL 5583552, at *2). Accordingly, Cornell's motion to dismiss Plaintiffs' conversion claim is granted.

## F.    New York General Business Law Sections 349 and 350

Here, Plaintiffs allege that Cornell's marketing materials created a reasonable expectation that Plaintiffs would receive an in-person educational opportunity and on-campus experience. *See*

Dkt. No. 33 at ¶¶ 221-24.  Plaintiffs allege that such promises constitute unfair business practices and were deceptive and injurious to Plaintiffs in light of Cornell's closure and transition to online learning.  *See id.* at ¶¶ 226-27.  Cornell argues that Plaintiffs' General Business Law claims should be dismissed because they are improperly based on an alleged failure to disclose a hypothetical possibility and, alternatively, no reasonable consumer acting reasonably under the circumstances would be misled by Cornell's statements.  *See* Dkt. No. 38-1 at 29-30.  In response, Plaintiffs argue only that the claims are sufficiently pled.  *See* Dkt. No. 39 at 28-30.

Omissions are actionable under the New York General Business Law "'where the business alone possesses material information that is relevant to the consumer and fails to provide this information.'"  *In re Sling Media Slingbox Adver. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 745 (1995)).  "The key, of course, is that the defendant 'possess' the information that the plaintiff claims it improperly withheld."  *Id.*  "Thus, plaintiffs pursuing an omission-based claim must 'plausibly allege that the ... defendants had knowledge of the material information and failed to disclose or actively concealed such information ....'"  *Id.* (quoting *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 129 (E.D.N.Y. 2011); *see also Tomassini v. FCA US LLC*, No. 14-CV-1226, 2015 WL 3868343, *6-7 (N.D.N.Y. June 23, 2015)).  "In other words, a defendant's failure to reveal facts about which even it was unaware at the time will not lead to liability under [Section] 349." *Id.*

It cannot reasonably be said that Cornell had knowledge that a global pandemic would force the closure of colleges and universities across the country and require transition to online learning.  Nor have Plaintiffs plausibly alleged that Cornell was aware of the possibility of a pandemic and failed to disclose that information to potential students.  An unforeseen pandemic

forced the closure of institutions of all kinds across the world.  The Governor of New York issued an executive order prohibiting in person, on-campus instruction.  *See Hassan*, 2021 WL 293255, at *9 (citing N.Y. Exec. Order No. 202 (Mar. 7, 2020); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998)).  Plaintiffs have not plausibly alleged that Cornell's marketing materials would lead a reasonable consumer to believe that it would continue to offer in-person learning and an on-campus experience even in the face of a deadly pandemic.  Accordingly, this Court, as have others considering similar allegations, finds that no reasonable prospective student could be misled or deceived based on Cornell's statements.  *Bergeron*, 2020 WL 7486682, at *11; *Ford*, 2020 WL 7389155, at *10.  Cornell's motion to dismiss this claim is granted.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 38) is **GRANTED in part and DENIED in part**[3]; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 3, 2021
     Albany, New York

```
Mae A. D'Agostino
U.S. District Judge
```

---

[3] The following claims survive this motion to dismiss: Plaintiffs' breach of contract claims with respect to tuition and miscellaneous fees.