UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**ALEC FABER**, individually and on behalf of all others similarly situated; and **AHNAF RAHMAN**, individually and on behalf of others similarly situated,

                **Plaintiffs,**

vs.                                 3:20-CV-00467 (MAD/ML)

**CORNELL UNIVERSITY**,

                **Defendant.**

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **POULIN, WILLEY, ANASTOPOULO, LLC**<br>32 Ann Street<br>Charleston, South Carolina 29403<br>Attorneys for Plaintiffs | **ERIC POULIN, ESQ.**<br>**PAUL J. DOOLITTLE, ESQ.** |
| **LYNCH CARPENTER, LLP**<br>117 E. Colorado Blvd. - Suite 600<br>Pasadena, California 91105<br>Attorneys for Plaintiffs | **(EDDIE) JAE K. KIM, ESQ.**<br>**EDWARD W. CIOLKO, ESQ.**<br>**GARY F. LYNCH, ESQ.**<br>**JAMES PATRICK MCGRAW, III, ESQ.**<br>**TIFFANY E. MALAMPHY, ESQ.** |
| **CHERUNDOLO LAW FIRM, PLLC**<br>AXA Tower II - Ste 1600<br>Syracuse, New York 13202<br>Attorneys for Plaintiffs | **JOHN C. CHERUNDOLO, ESQ.**<br>**J. PATRICK LANNON, ESQ.** |
| **BURSOR & FISHER P.A.**<br>1330 Avenue of the Americas<br>32nd Floor<br>New York, New York 10019<br>Attorneys for Plaintiffs | **MAX STUART ROBERTS, ESQ.**<br>**PHILLIP L. FRAIETTA, ESQ.**<br>**SARAH WESTCOT, ESQ.** |
| **ANASTOPOULO LAW FIRM, LLC**<br>32 Ann Street<br>Charleston, South Carolina 29403<br>Attorneys for Plaintiffs | **ROY T. WILLEY, IV, ESQ.**<br>**BLAKE G. ABBOTT, ESQ.** |
| **TOPTANI LAW PLLC** | **EDWARD TOPTANI, ESQ.** |

375 Pearl Street
Suite 1410
New York, New York 10038
Attorneys for Plaintiffs

**LYNN LAW FIRM, LLP**                                  **KELSEY W. SHANNON, ESQ.**
333 West Washington Street - Suite 100
Syracuse, New York 13202
Attorneys for Plaintiffs

**CORNELL UNIVERSITY**                                  **VALERIE L. DORN, ESQ.**
Office of Counsel                                       **ADAM PENCE, ESQ.**
300 CCC Building
235 Garden Avenue
Ithaca, New York 14853
Attorneys for Defendant

**JENNER & BLOCK LLP**                                  **ISHAN KHARSHEDJI BHABHA, ESQ.**
1099 New York Avenue                                    **LAUREN J. HARTZ, ESQ.**
Suite 900                                               **MARGARET M. HLOUSEK, ESQ.**
Washington, DC 20001                                    **PAUL RIETEMA, ESQ.**
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On April 23, 2020, Plaintiffs[1] filed this diversity class action against Defendant Cornell University ("Defendant" or "Cornell") alleging breach of contract, unjust enrichment, and conversion under New York State law. *See* Dkt. No. 1. Following consolidation, Plaintiffs amended the complaint with additional claims under N.Y. Gen. Bus. L. §§ 349 and 350. *See* Dkt. No. 33. On October 3, 2022, Plaintiffs filed a motion seeking class certification and appointment of class representatives and counsel. *See* Dkt. No. 132. Thereafter, on March 6, 2023, Plaintiffs

---

[1] Plaintiffs are individual students residing outside the State of New York. *See* Dkt. No. 33 at ¶¶ 9-11. Plaintiffs consolidated this action with cases Nos. 20-CV-00467 (MAD/ML) and 20-CV-00592 (MAD/ML) on October 13, 2020. *See* Dkt. No. 32. A consolidated amended complaint followed on October 27, 2020. *See* Dkt. No. 33.

2

filed the instant motion unopposed, which seeks preliminary approval of class settlement and a final approval hearing, as well as renewing the requests for class certification and representative appointment. *See* Dkt. No. 156. For the reasons and authorities set forth below, the motion is granted.[2]

## II. BACKGROUND

Defendant is a private university located in Ithaca, New York, with more than 24,000 enrolled students. Dkt. No. 33 at ¶¶ 6-7. During the 2019-2020 academic year, Defendant's spring semester began on January 21, 2020, and was scheduled to conclude on or about May 16, 2020, with commencement ceremonies on May 24, 2020. *See id.* at ¶¶ 36-37. On March 13, 2020, Defendant announced "that it was suspending all classes effective immediately" in light of the global COVID-19 pandemic. *Id.* at ¶¶ 39-40. Defendant announced further that "all undergraduate and most professional students were required to leave campus no later than March 29, 2020," and further "strongly encouraged" students to leave campus "as soon as possible." *Id.* at ¶ 40.

Following the announcements, "Defendant continued to offer some level of academic instruction via online classes[.]" Dkt. No. 33 at ¶ 45. Students began requesting refunds for tuition and fees related to the "benefits of on-campus enrollment," including "[a]ccess to facilities such as libraries, laboratories, computer labs, and study rooms," and "the myriad activities offered by campus life[.]" *Id.* at ¶¶ 45-46. However, Defendant refused to pay the refunds as requested. *See id.* at ¶ 47.

At some point prior to the instant action, Defendant announced that it would "offer a pro-

---

[2] Following the issuance of this Memorandum-Decision and Order, the Court will issue a separate Order outlining the settlement procedures, as stipulated to by the parties in the proposed Settlement Agreement and proposed Order affixed thereto. *See* Dkt. Nos. 156-3 & 156-5.

3

rated refund on room and board fees." Dkt. No. 33 at ¶ 50. However, Plaintiffs understood that Defendant intended "to calculate this refund from a pro-rated date of March 29, 2020 rather than March 13, 2020 (the date students were directed to leave campus)." *Id.* Plaintiffs brought this action seeking "a pro-rated refund of the tuition and fees they paid for the Spring 2020 semester from when [Defendant] stopped providing in-person classes and switched to remote online learning." *Id.* at ¶ 53.

After three years of contested litigation, the parties have "engaged in significant motion practice, multiple mediations, and substantial discovery." *See* Dkt. No. 156-2 at ¶ 16. For instance, on August 18, 2021, the parties participated in a mediation session, as ordered by the Court. *See id.* at ¶ 25. The session was not successful. *See id.* After engaging in further discovery, the parties participated in a second mediation on June 9, 2022. *See id.* The second session was also unsuccessful. *See id.* Following Plaintiffs' motion for class certification, the parties discussed Defendant's "intent to file a motion for summary judgment with the Court," prompting additional settlement discussions. *See id.* at ¶ 26. After agreeing on proposed terms, the parties prepared a written agreement ("Settlement Agreement"), and executed same on March 6, 2023. *See id.* at ¶ 27.

At its core, the Settlement Agreement sets forth a monetary amount of $3,000,000.00, which is "for the direct benefit of the Settlement Class as any remaining funds after distribution will be put into a Student Access Fund for providing assistance to Cornell students who need financial assistance, including enrolled members of the Settlement Class." Dkt. No. 156-2 at ¶ 30. Moreover, the amount "will be used to pay all settlement awards, attorneys' fees, notice, and administrative costs." *Id.* According to the Settlement Agreement, the fee award "is subject to this Court's approval and will serve to compensate for the time, risk and expense Class Counsel

incurred pursuing claims on Settlement Class's behalf." *Id.* at ¶ 33.

### III. DISCUSSION

**A.  Class Certification**

"Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied." *In re Am. Int'l Grp., Inc. Sec. Litig. (In re AIG)*, 689 F.3d 229, 238 (2d Cir. 2012).  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems" precluding a finding of predominance under Rule 23(b)(3). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also In re AIG*, 689 F.3d at 242 ("[M]anageability concerns do not stand in the way of certifying a settlement class").  "But other specifications of the Rule — those designed to protect absentees by blocking unwarranted or overbroad class definitions – demand undiluted, even heightened, attention in the settlement context." *Amchem*, 521 U.S. at 620.

*1. Rule 23(a)*

Rule 23(a) requires that "(1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representatives parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a).  A class action may be maintained if the requirements of Rule 23(a) are satisfied and, as relevant here, "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In the Second Circuit, "'Rule 23 is given liberal rather than restrictive

construction, and courts are to adopt a standard of flexibility' in deciding whether to grant certification." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)).

Herein, the Court finds that the proposed class meets all requirements for certification under Fed. R. Civ. P. 23(a). As an initial matter, according to the Settlement Agreement, the class includes the following:

> [A]ll students enrolled in a degree-bearing Cornell program for the Spring 2020 semester, with the exception of: (i) any person who withdrew from Cornell on or before March 1, 2020; (ii) any person enrolled for the Spring 2020 semester solely in a program that, at the beginning of the Spring 2020 semester, was to be delivered as an online program; (iii) any person who executes and files a proper and timely opt-out request to be excluded from the Settlement Class; and (iv) the legal representatives, successors or assigns of any such excluded person.

Dkt. No. 156-3 at 9-10. As such, Rule 23(a)(1) is satisfied because the size of the class consists of 24,000 members, and thus joinder would be impracticable. *See* Dkt. No. 156-2 at ¶ 50; *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473 (2d Cir. 1995) (stating that "numerosity is presumed at a level of 40 members") (citation omitted).

As to Rule 23(a)(2)'s commonality standard, the Supreme Court has ruled that a question is common where it is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke," and where "the class members have suffered the same injury." *Wal-Mart Stores*, 564 U.S. at 349-50. The Second Circuit has also noted that "[w]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Johnson v. Nextel Comm. Inc.*, 780 F.3d 128, 137 (2d Cir. 2015). Based on the current record, the Court finds that all class members are students sharing common questions

of fact and law concerning alleged injuries from Defendant's decision to "suspend[] all classes effective immediately" during its spring 2020 semester . Dkt. No. 33 at ¶¶ 39-40.

Furthermore, the typicality standard set forth in Rule 23(a)(3) is satisfied

> when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability. . . . [M]inor variations in the fact patterns underlying [the] individual's claims do not preclude a finding of typicality. By contrast, unique defenses that threaten to become the focus of the litigation may preclude such a finding.

*Sykes v. Mel Harris and Assoc., LLC*, 285 F.R.D. 279, 287 (S.D.N.Y. 2012) (internal quotation marks and citations omitted). At this stage, it is undisputed that each proposed class member "enrolled as on-campus students of Cornell, registered for in-person class, paid money in exchange for in-person education and access to on-campus facilities and services that were denied when Cornell closed its campus in Spring 2020." Dkt. No. 156-1 at 26 (citing Dkt. No. 156-2 at ¶ 15). The Court finds that there are no unique defenses or legal theories that would preclude a finding of typicality in light of the factual allegations herein. Accordingly, the Rule 23(a)(3) standard is satisfied.

Finally, the proposed class meets the "adequacy of representation" requirement set forth in Rule 23(a)(4). To determine adequacy, the Court must inquire as to whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). After carefully reviewing the record at-bar, the Court finds that there is no indication that Plaintiffs' interests would be at odds with those of the proposed class members. Furthermore, counsel for Plaintiffs assert that, prior to commencing suit, counsel "spent many hours investigating the claims of several potential plaintiffs" and "interviewed a number of students and . . . gather[ed] information about [Defendant's] conduct

7

and its impact upon consumers." *Id.* at ¶ 18.  Additionally, counsel "also expended significant resources researching and developing the legal claims at issue." *Id.* at ¶ 19.  Counsel further represents having "experience in understanding the damages at issue, what information is critical in determining class membership, and what data is necessary to calculate each Settlement Class Member's respective damages." *Id.*  As such, the Court finds that Class Counsel, Lynch Carpenter, LLP, Poulin Wiley Anastopoulo, LLC, Cherundolo Law Firm, PLLC, and Toptani Law, PLLC, together are qualified, experienced, and competent in class action litigation.  *See* Dkt. Nos. 156-8, 156-9, & 156-10.

### 2. *Rule 23(b)*

In addition to Rule 23(a)'s requirements, Rule 23(b)(3) permits class status if

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undersirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

FED. R. CIV. P. 23(b)(3).

Herein, the Court finds that the common questions predominate over any individual member's questions and that a class action is superior to other methods of adjudicating this controversy.  Importantly, the Court finds that, because other members of the class will have little interest in prosecuting separate actions and, for any members who may be so inclined, the potential individual recovery is relatively small in comparison to the cost of litigation.  The Court has based this determination on its own judicial experience, the factual allegations at-bar, and the

representations in the joint declaration from counsel. *See* Dkt. No. 156-2. Furthermore, as far as the Court is aware, the only other actions separate from the instant proceeding are No. 20-CV-471 (MAD/ML) and 20-CV-592 (MAD/ML), which were consolidated with the instant action nearly three years ago. *See* Dkt. No. 32.

Finally, in factoring the difficulties in managing complex class litigation, the Court has carefully reviewed the parties' proposed notice and distribution plans relative to the 24,000 class members. *See* Dkt. Nos. 156-4, 156-6, & 156-13. Notably, the parties have retained KCC Class Action Services, LLC ("KCC"), "a leading class action administration firm that provides comprehensive class action services, including claims administration, legal notification, email and postal mailing campaign implementation, website design, call center support, class member data management, check and voucher disbursements, tax reporting, settlement fund escrow reporting, and other related services[.]" Dkt. No. 156-13 at ¶ 2. Based on the above-discussed factors, the Court finds that class certification in this matter is appropriate.

**B.    Likelihood of Approval**

"In weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (quoting Fed. R. Civ. P. 23(e)(1)(B)(i-ii)) (emphasis in original). Although the factors set forth in Rule 23(e)(2) apply to final approval, courts "look[] to them to determine whether it will likely grant final approval based on the information currently before the Court." *Id.* Rule 23(e)(2) provides that a court may approve a class action settlement if "it is fair, reasonable, and adequate" after considering the following:

>> (A) the class representatives and class counsel have adequately represented the class;
>>
>> (B) the proposal was negotiated at arm's length;
>>
>> (C) the relief provided for the class is adequate, taking into account:
>>
>>> (i) the costs, risks, and delay of trial and appeal;
>>>
>>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of process class-member claims;
>>>
>>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>>
>>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>>
>> (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).

Courts in the Second Circuit also analyze the framework set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), "in tandem with Rule 23" to determine whether a class settlement is substantively fair and warrants final approval. *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 309 (S.D.N.Y. 2020) (citing *Grinnell*, 495 F.2d at 463). The *Grinnell* factors include (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible

recovery in light of all the attendant risks of litigation. *See Grinnell*, 495 F.2d at 463.

In this case, the proposed settlement appears fundamentally fair in light of the record currently before the Court. As noted jointly by the parties, the instant matter represents "a genre of cases involving students seeking partial refunds of tuition and mandatory fees brought against universities throughout the country which involves novel claims, include no trial verdict, and has resulted in a mixed bag of results during pre-trial litigation." Dkt. No. 156-1 at ¶ 18. The parties have represented to the Court that the anticipated costs of further motion practice, coupled with the extent of completed discovery, "would be substantial," and that, in any event, there are inherent uncertainties relative to any potential rulings in this case. *Id.* And according to the joint declaration of counsel, "[t]here are currently no objections to the Settlement[.]" *Id.* at 19.

Given the scope of the monetary relief sought, and the size of the proposed class, as well as all factors discussed throughout this Memorandum-Decision and Order, the Court finds that, subject to a final approval hearing, the Settlement Agreement is in accordance with Rule 23's requirements.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Cornell University's unopposed motion (Dkt. No. 156) seeking preliminary approval of proposed class action settlement; provisional certification, for purposes of settlement only, of settlement class; preliminary appointment of settlement class representatives; preliminary appointment of class counsel; approval of proposed settlement procedure and schedule; and approval of proposed notice to class members and hearing on final approval, is **GRANTED**; and the Court further

**ORDERS** that the Final Approval Hearing shall be held before this Court on **October 25, 2023 at 12:00 p.m.**, at the James T. Foley United States Courthouse, 445 Broadway, Albany, New York 12207, to determine whether the Settlement Agreement should be fully, finally, and unconditionally approved, including the fairness, reasonableness, and adequacy of the proposed settlement; and the Court further

**ORDERS** that the parties and their counsel shall adhere to the settlement procedures set forth in the Order granting preliminary approval of the class action, which will be issued subsequently and separately from this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 24, 2023
Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge